IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMARCO POOLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:14-cv-1094-NJR-DGW |
| ) | |
| DR. J. COE and UNKNOWN NURSE, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a). For the reasons set forth below, it is **RECOMMENDED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed on July 22, 2015 (Doc. 33) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

### BACKGROUND

Plaintiff filed a Complaint pursuant to 42 U.S.C § 1983 alleging violations of his civil rights while incarcerated at the Lawrence Correctional Center (Doc. 1).[1] In an Order entered on November 26, 2014, as required by 28 U.S.C. § 1915A, Plaintiff was permitted to proceed on one count of deliberate indifference to a serious medical need in violation of the Eighth

---

[1] On October 16, 2014, Plaintiff informed the Court that he had been transferred to the Pinckneyville Correctional Center (Doc. 5).

Amendment to the United States Constitution (Doc. 9). In particular, Plaintiff alleges that he noticed a bump near his left ear on March 29, 2014. The bump began growing in size in July, 2014 which coincided with headaches and pain on the left side of his face. He submitted multiple requests for medical care and was eventually examined by a Defendant, Jane Doe Nurse. She referred him to Dr. Coe, another Defendant,[2] who recommended conservative treatment (hot water compress) for the cyst and who did not prescribe pain medication. Plaintiff returned for care a few weeks later with increased symptoms and a cyst that had doubled in size. Dr. Coe informed Plaintiff that the cyst may be a sign of cancer but otherwise took no action to treat the condition. Plaintiff sought additional medical care and was examined by Dr. Coe again in September, 2014. Dr. Coe prescribed pain medication but took no further action. Plaintiff filed this lawsuit on October 9, 2014 (Doc. 1).

Defendant Coe filed a Motion for Summary Judgment on Exhaustion on July 22, 2015 (Doc. 33) and Plaintiff filed a response on August 3, 2015 (Doc. 38). A hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), was held on September 17, 2015.

## FINDINGS OF FACT

While at Lawrence, Plaintiff submitted eight (8) grievances (including emergency and regular grievances) after March 29, 2014: on April 14, 2014 (emergency), April 24, 2014 (non-emergency), June 30, 2014 (emergency), July 31, 2014 (non-emergency), August 14, 2014 (non-emergency), September 11, 2014 (non-emergency), and September 25, 2014 (2) (non-

---

[2] It is **RECOMMENDED** that the Docket sheet be modified to reflect the true spelling of this Defendant's name, "Dr. John Coe."

emergencies) (Def. Ex. B, Doc. 34-2, pp. 2-3). [3] These grievances concerned discrimination by staff, administrative policies (or classification), misplaced personal property, stolen property, failure of staff to perform duties, disciplinary sanctions, and mailroom procedures, respectively (Def. Ex. C, Doc. 34-3, p. 1). Records from the Administrative Review Board (ARB) reveal that Plaintiff appealed a number of grievances that he submitted at the institutional level (Def. Ex. A, Doc. 34-1). He also wrote letters to the ARB in June, 2014 complaining of being housed with known enemies and disciplinary tickets (Doc. 34-1, pp. 9-15). All of the aforementioned grievances contained responses at the institutional level and by the ARB. None of these grievances are related to the allegations made in this case.

The record also contains a grievance dated October 2, 2014 (which is marked as an emergency) regarding the medical issue that is the subject of the present lawsuit – indeed, the Complaint appears to be a verbatim recitation of the information contained in the grievance (Doc. 34-1, pp. 32-33). The grievance relates that Plaintiff noticed a bump on March 29, 2014, that he saw a doctor or nurse regularly for his high blood pressure, and that he specifically sought medical care in July, 2014 because the bump was getting bigger. He sent further requests for medical care in the following weeks and finally saw a nurse who then referred him to a doctor. A few weeks later, he was seen by Dr. Coe who did not treat his condition effectively. The grievance goes on to indicate that he saw Dr. Coe again after two weeks and then again sometime after that. The grievance indicates that the pain has lasted over 6 months and there

---

[3] These dates reflect the date that the grievance was received by the grievance officer and not the date that the grievance was filled out by Plaintiff. Thus, the September 11, 2014 grievance was received on that date by the grievance officer (Doc. 34-2, p. 2), corresponds to grievance number "09-14-68" (*Id.*), and was dated August 30, 2014 by Plaintiff (Doc. 34-1, p. 29).

have been no diagnostic tests to determine what the cyst is. The grievance does not contain a response from a counselor or the Warden (*Id.*). The ARB received the grievance on December 1, 2014 (*Id.*).

At the hearing held on September 17, 2015, Plaintiff testified that he began seeking medical care for the cyst in March, 2014 by sending requests to the Healthcare Unit. When those went unanswered, he asked for grievance forms a Lieutenant Dallas and an unknown wing officer. He then filed two grievances in June, 2014 by giving them to an unknown officer who picked up mail in segregation. When those two grievances went unanswered, Plaintiff mailed the October 2, 2014 grievance directly to the ARB. Plaintiff did not follow up on the June 2014 grievances because he was being moved around a lot and because there was "a lot going on" at the time.

The Court finds that Plaintiff is not credible in his assertion that he submitted two grievances in June 2014 and that he was denied grievance forms. The record reveals that Plaintiff filed numerous grievances during the relevant time period – demonstrating that he had access to the grievance process. Plaintiff also did not mention the June 2014 grievances in his response to the Motion for Summary Judgment (Doc. 38). Finally, the June 2014 grievances could only have grieved the alleged failure to respond to Plaintiff's requests for medical care. Those grievances could not have grieved events that occurred in July 2014 and thereafter, as contained in the October 2, 2014 grievance and the Complaint in this matter. No grievance, including the October 2, 2014 grievance, makes any mention of the institution failing to respond to his grievances.

Finally, this Court finds that Plaintiff submitted no other grievance regarding his medical

concerns except the October 2, 2014 grievance (which was sent directly to the ARB).

## CONCLUSIONS OF LAW

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is Athe put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.@ *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

Under the procedures set forth in the Illinois Administrative Code, an inmate must first attempt to resolve a complaint informally with his Counselor. ILL. ADMIN. CODE TIT. 20, § 504.810(a). If the complaint is not resolved, the inmate may file a grievance within 60 days after the discovery of the incident, occurrence, or problem that gives rise to the grievance. *Id*. §504.810(b). The grievance officer is required to advise the Chief Administrative Officer

("CAO" – usually the Warden) at the facility in writing of the findings on the grievance. *Id.* §504.830(d). The CAO shall advise the inmate of the decision on the grievance within two months of it having been filed. *Id.* § 504.830(d). An inmate may appeal the decision of the CAO in writing within 30 days to the Administrative Review Board for a final decision. *Id.*, § 504.850(a). *See also Dole v. Chandler*, 438 F.3d 804, 806-07 (7th Cir. 2006). An inmate may request that a grievance be handled as an emergency by forwarding it directly to the CAO. If the CAO determines that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance shall be handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender indicating what action shall be taken. *Id.* §504.840.

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684. Administrative remedies were available to Plaintiff

because he had access to grievance forms and was not otherwise hindered from filing grievances.

Plaintiff did not file a grievance related to his medical issues complained of in this lawsuit until October 2, 2014, seven days prior to the filing of this lawsuit. He submitted this emergency grievance directly to the ARB even though he was still housed at the prison where the alleged events occurred. Such an emergency grievance should have been forward to the Warden of Lawrence. ILL. ADMIN. CODE TIT. 20, § 504.840. Moreover, Plaintiff could not have submitted the grievance directly to the ARB because the grievance did not meet the criteria contained in section 504.870. Plaintiff failed to exhaust his administrative remedies as to Defendant John Coe prior to filing suit and the claims against him should be dismissed without prejudice.

Plaintiff also has named an unknown nurse, who he identified at the *Pavey* hearing as Nurse Woods, as a Defendant in this matter. In light of this Court's finding, that Plaintiff submitted only one grievance related to the allegations in his Complaint on October 2, 2014 and that that grievance failed to exhaust his administrative remedies, it appears clear that the claims against the Unknown Nurse should also be dismissed without prejudice. Plaintiff should be given notice, and an opportunity to respond, pursuant to Federal Rule of Civil Procedure 56(f) that the Court may grant summary judgment for the nonmovant, the unknown nurse, based on the above findings and conclusions (if adopted).

## RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMNEDED** that the Docket sheet be modified to reflect the true spelling of this Defendant's name, "Dr. John Coe", that the Motion for Summary Judgment filed by Defendant John Coe be **GRANTED**, that the claims against Defendant John

Coe be **DISMISSED WITHOUT PREJUDICE,** that Plaintiff be notified, and given an opportunity to respond, that the Court may grant summary judgment in favor of Defendant Unknown Nurse, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: September 18, 2015**

                                                  **DONALD G. WILKERSON**
                                                  **United States Magistrate Judge**